**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Terry Lynn HENDRIX, James George Shepherd, Russell Edward Merritt, Defendants-Appellants.**

**Nos. 83–2131, 83–2187 and 83–2277.**

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1984.

Decided Jan. 8, 1985.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Robert J. Weber, Chicago, Ill., Michael B. Metnick, Costello, Long, Young & Metnick, Springfield, Ill., Jeffrey D. Colman, Jenner & Block, Chicago, Ill., for defendants-appellants.

Before BAUER, EDWARDS* and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

Terry Lynn Hendrix, James George Shepherd, and Russell Edward Merritt were convicted after a jury trial of armed bank robbery, 18 U.S.C. § 2213(d) and conspiracy to commit armed bank robbery, 18 U.S.C. § 371.[1] On appeal, they raise numerous issues relating primarily to the denial of various motions before, during, and after trial. We have considered all of the allegations of error noted by appellants and find them to be without merit. Accordingly, we affirm the judgments of the district court.

---

* The Honorable George Clifton Edwards, Jr., Circuit Judge for the Sixth Circuit, sitting by designation.

1. The defendants received the following sentences:

Shepherd—15 years incarceration, armed robbery; consecutive 5 years probation, conspiracy.

Merritt—25 years incarceration, armed robbery; consecutive 5 years incarceration, conspiracy.

Hendrix—25 years incarceration, armed robbery; consecutive 2 years incarceration, conspiracy.

In addition, all the defendants were ordered to make restitution to various victims of the robbery.

## I.

James Shepherd lived in Andalusia, Illinois with his ex-wife, Irene Anders. On January 15, 1983, Shepherd was joined in Andalusia by two friends, Russell Merritt and Terry Hendrix. On January 18, at approximately 1:00 p.m., Shepherd delivered Anders' car to her office in Milan, Illinois, and was seen leaving in Hendrix's car. Between 1:00 p.m. and 3:00 p.m., a blue Ford Torino was stolen from the parking lot across the street from Anders' office. At approximately 3:20 p.m., two masked armed robbers burst into the Andalusia Community Bank and ordered everyone to the floor. One of the robbers entered the bank president's office and ordered the president and his customer, Allan Fuhr, into the lobby and onto the floor. The other robber removed approximately $12,000 from the tellers' stations.

As soon as the robbers left the bank, the president looked out the window and saw a blue Ford Torino speeding out of the parking lot. Fuhr gave chase in his truck and soon flagged down Deputy Sheriff Orrin Meyers. Both Meyers and Fuhr saw three men in the getaway car. Shots were fired from the car, however, and Meyers lost sight of it.

The getaway car was recovered later that day in the subdivision where Shepherd lived. Police recovered a ski mask, some loose currency, and a cigarette butt from the car. An expert testified that the hair found in the mask matched samples of Merritt's hair "in every observable microscopic characteristic," and there was some forensic evidence connecting the cigarette butt to Shepherd.[2]

When Anders returned home that evening, she was met by Merritt, who said that he had "some good news and some bad news." Merritt told Anders, "We were chased but we got away." He then told her that a bag of money was hidden behind her house. Anders replied that she did not want the money in the house. She apparently soon decided she did not want Merritt in the house either, and she took him to the home of her daughter and son-in-law, Judy and Larry Parmley. Merritt returned to Des Moines, Iowa, the next day.

In the meantime, Anders retrieved the bag of money. On January 19, she mailed $7,025 to Shepherd's cousin in Ottumwa, Iowa, and took the rest of the money to her office. She then called the cousin, told him to expect a package, and instructed him not to open it. The cousin testified that he was told by Anders that Shepherd would pick up the package in a few days. After the package arrived, the cousin, who had by that time heard about the robbery, became suspicious. He called the FBI, and agents instructed him to open the package. The money in the package was identified as part of the stolen money from the Andalusia bank.

Shepherd was arrested in Rock Island, Illinois, on January 20. Hendrix and Merritt were arrested the next day in an apartment they were sharing in Des Moines. A search of the apartment pursuant to a warrant revealed more of the stolen money (some of it bearing Merritt's fingerprints), a loaded revolver, and Shepherd's driver's license and social security card.

## II. Pretrial and Trial Motions

### A. Merritt's and Hendrix's Motion to Suppress

A warrant to search the Des Moines apartment and Hendrix's car was obtained by FBI Agent William Barrett Root. The application for the warrant was supported by Root's affidavit, which outlined the facts of the robbery as recounted by witnesses, and the affidavit of Deputy Sheriff Richard Fisher. The Fisher affidavit stated that Rhonda Bennett, also a daughter of Irene Anders, and Larry and Judy Parmley

---

**2.** The cigarette butt was from a Kool cigarette, Shepherd's brand. A serologist testified that the person who smoked the cigarette was a "Type A secreter." Neither Hendrix nor Merritt was a Type A secreter; Shepherd was. The procedure used here cannot positively identify anyone, however, although it can positively exclude individuals who do not have the blood type identified by the serologist.

had identified Merritt and Hendrix from bank surveillance photographs.[3]

Merritt and Hendrix moved to suppress the evidence found in the search on the grounds that the affidavits did not establish probable cause to believe that evidence relating to the robbery would be found in the locations specified in the warrant. At a pretrial hearing, both the Parmleys and Bennett recanted their identifications, and Fisher admitted that he had erred in stating that Bennett had identified Merritt. The defendants then filed a supplemental motion to suppress, arguing that the Fisher affidavit contained knowingly false information. The district judge, noting Bennett's and the Parmleys' relationship to Anders (who had since been charged as an accessory after the fact), found their testimony incredible. Without making a finding about whether the information about Bennett's identification of Merritt had been included in the affidavit with knowledge of its falsity, the judge eliminated that identification and evaluated the affidavits to determine whether they still supported the issuance of the warrant. Finding that they did, the judge denied the defendants' motions to suppress.

 On appeal, the defendants renew their arguments relating to their suppression motions. The defendants contend that, in evaluating the sufficiency of the affidavits to support the issuance of the warrant, the district court was required to eliminate from consideration all of the identifications made by the Parmleys and Bennett. We disagree. The district court judge rejected the testimony of the Parmleys and Bennett at the suppression hearing. The "[c]redibility of witnesses on a motion to exclude or suppress evidence is for the district judge to determine," *United States v. Hilbrich*, 341 F.2d 555, 559 (7th Cir.), *cert. denied*, 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed.2d 704 (1965), and the district

judge's credibility determinations will not be overturned on appeal unless clearly erroneous. *United States v. Davis*, 514 F.2d 1085, 1088 (7th Cir.1975); *United States v. Connor*, 478 F.2d 1320, 1323 (7th Cir.1973). We cannot say that the judge's determination that the testimony of the Parmleys and Bennett at the pretrial hearing was incredible is clearly erroneous. We therefore do not agree that the trial judge was required to exclude their identifications in assessing whether probable cause existed for the issuance of the warrant.[4]

 We further disagree with the defendants' assertion that the affidavits do not establish probable cause to believe that evidence of the bank robbery would be found in the apartment and Hendrix's automobile. "Probable cause is established whenever there is a reasonable probability of finding the desired items in a particular location." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982). The defendants argue that it was unreasonable to infer that evidence of the bank robbery would be found in the Des Moines apartment because three days had elapsed between the robbery and the search. However, the Fisher affidavit establishes the defendants' connection to the robbery, as well as the fact that Merritt left Illinois on a bus bound for Des Moines on the morning after the robbery. Further, the Root affidavit establishes that Hendrix was interviewed by his parole officer in Des Moines the day after the robbery, and that both Merritt and Hendrix were arrested two days after the robbery in the Des Moines apartment. Thus, the affidavits establish the probability that Merritt and Hendrix were involved in the robbery, and that both returned to Des Moines within a day after the robbery occurred. We stated in *Rambis:*

**3.** The figures in the bank surveillance photographs were masked. Accordingly, the affidavit recites that the Parmleys and Bennett identified Merritt and Hendrix by their clothing.

**4.** Hendrix also claims that the affidavit contained no information connecting his car to the robbery, because his car is identified in the Fisher affidavit as a brown Ford sedan, and in the Root affidavit as a brown over cream Chevrolet. *We do not find the difference significant.*

Whether there is a sufficient nexus between the items to be seized and the place to be searched to establish probable cause depends on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would hide the items.

686 F.2d at 625; *see also United States v. Lucarz*, 430 F.2d 1051 (9th Cir.1970). The Andalusia bank robbery involved the theft of thousands of dollars. Two of the probable perpetrators of the robbery, neither of whom were natives of the area, left Andalusia within twenty-four hours to return to Des Moines. It was reasonable for the magistrate to infer that they would not leave without their loot and that it was likely that they would conceal the cash in the apartment rather than in some less secure and accessible place. The government was not required to negate every other possibility about where such evidence might be located. *See Rambis*, 686 F.2d at 623. We affirm the district court's finding that there was probable cause to search the apartment and Hendrix's car.

## B. Motion for Change of Venue

All the defendants moved for a change of venue based upon the publication, approximately two months before trial, of eleven newspaper articles in a local paper, and coverage of the robbery by local radio and television stations. The trial court denied the motions and relied on the voir dire examination to protect the defendants from any prejudice from juror exposure to pretrial publicity. Most of the potential jurors had heard or read something about the robbery; however, upon questioning, most could remember no details of what they had heard or read. The few jurors who indicated that they remembered some of the details of what they had heard or read were questioned individually. None of these jurors remembered more than a few details about the case and none of them remembered any details about the defend-

ants. All of the jurors who eventually served at trial assured the court that they would not be influenced by anything they might have seen or read about the case before trial.[5]

■ The defendants first argue that the trial judge should not have attempted to rely on the voir dire examination because the pretrial publicity was extensive. However, the defendants can point to nothing in the record that supports their claim that the atmosphere surrounding the trial was so tainted that they could not receive a fair trial. *See United States v. Garza*, 664 F.2d 135, 141 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982). On the contrary, the record shows that the trial judge's careful questioning of the jurors adequately protected the defendants.

■ The defendants also argue, somewhat misleadingly, that the trial judge was required to question each juror individually, and that he failed to do so in this case. We have consistently rejected any requirement that each juror be individually examined in every case where pretrial publicity is at issue. *United States v. Wilson*, 715 F.2d 1164, 1168 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *United States v. Kampiles*, 609 F.2d 1233 (7th Cir.1979), *cert. denied*, 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *United States v. Carter*, 602 F.2d 799 (7th Cir.), *cert. denied*, 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979). However, the record reveals that the trial judge did, in fact, ask each venireman if he had read or heard anything about the case. Those potential jurors who indicated that they had some exposure to media accounts of the case were asked how they had heard of the case and whether they remembered any details of what they had read. Those who indicated that they had read detailed accounts of the robbery, or that they remembered details of what they had read or

---

5. The defendants did not challenge any of the jurors who indicated that they remembered any

details about the robbery during voir dire.

heard, were questioned individually outside the presence of the other veniremen. Thus, each potential juror's exposure to publicity was individually probed. The defendants have not even attempted to show that the procedure used here, to which they did not object, resulted in any prejudice to them. Accordingly, we reject their contention that the district court judge abused his discretion in denying their motions for a change of venue.

## C. Motions for Severance

 All the defendants moved for severance before trial, and renewed their motions during trial. The trial judge's decision not to grant a severance will be reversed only upon a showing of abuse of discretion. *See, e.g., United States v. Wilson,* 715 F.2d 1164 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *United States v. Thomas,* 676 F.2d 239 (7th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981); *United States v. West,* 670 F.2d 675 (7th Cir.), *cert. denied,* 457 U.S. 1124, 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). The defendants have made no such showing in this case.

The defendants' pretrial motions for severance were based upon their contention that their defenses would be antagonistic. The trial judge denied the motions at that time because of his belief that the possibility of antagonism was speculative. The defendants argue that the possibility of antagonistic defenses became a reality during the course of the trial, and that the judge abused his discretion in not granting the renewed motions at that time.

 In this circuit, severance is required because of "mutually antagonistic defenses" only when the defenses are so antagonistic that "the acceptance of one party's defense will preclude the acquittal of the

other." *United States v. Ziperstein,* 601 F.2d 281, 285 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *see United States v. Petullo,* 709 F.2d 1178 (7th Cir.1983). It is not enough for a defendant to show the "mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another," *United States v. Madison,* 689 F.2d 1300, 1306 (7th Cir.1982) (quoting *United States v. Ehrlichman,* 546 F.2d 910, 929 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977)), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983).

Hendrix offered an alibi defense at trial. Shepherd's defense was nonparticipation, and his trial strategy was to try to establish that only two men were involved in the robbery. Merritt took the stand in his own defense. He testified that he had been asked before the robbery about armed robbery techniques by a resident of Andalusia. The day of the robbery, according to Merritt, this resident appeared at Irene Anders' home with a sack of money. Merritt testified that the man was scared and that he left the money and a .38 revolver with Merritt. It is clear that the jury could have believed the defense of any of the defendants without finding it necessary to believe that one of the other defendants was guilty.

 Shepherd argues that the evidence against him was so slight as compared to the evidence against his co-defendants that he was necessarily prejudiced by the joint trial. However, Shepherd has made no showing of prejudice in this case, and the fact that the evidence against his co-defendants might have been proportionally greater than the evidence against him is not itself grounds for a severance. *United States v. Grabiec,* 563 F.2d 313, 319 (7th Cir.1977).[6]

**6.** Shepherd also argues that his co-defendants' defenses were so patently incredible that he was prejudiced by having to appear in the same trial with them. However, the danger of prejudice resulting from evidence pertinent only to co-defendants is not grounds for severance, *United*

*States v. Oxford,* 735 F.2d 276, 280 (7th Cir. 1984); *United States v. Grabiec,* 563 F.2d 313, 318 (7th Cir.1977), at least where, as here, the jury was properly instructed that the evidence was to be considered only in relation to one of the defendants.

All the defendants complain about the actions of their co-defendants' counsel, and argue that it was the strategy of each counsel to attempt to bolster the credibility of his client by attempting to discredit the other defendants. We have read the record and disagree with defendants' characterization of much of what occurred at trial. The record does not support the defendants' claims that each counsel continually argued that the other counsels' clients were guilty.[7]

The district court carefully instructed the jury that the evidence was to be considered separately as to each defendant, and the defendants have demonstrated no prejudice from their joint trial. We conclude that the district court did not abuse its discretion in denying the motions for severance.

### D. Motion to Suppress "Alibi Letter"

Hendrix's defense at trial was to offer an alibi. While incarcerated, Hendrix conferred with trial counsel, who allegedly told him to contact any witnesses who could substantiate his claim that he was in Des Moines on the day of the robbery. Hendrix wrote a letter to Dixie Glenn, in which he outlined the testimony that he wanted Glenn to give at trial, and asked her to destroy the letter. Hendrix turned the letter over to a cellmate to mail; the cellmate, however, turned the letter over to the authorities, who obtained a warrant and opened the letter. Excerpts of the letter were read to the jury.

Hendrix moved to suppress the letter, contending that the affidavit in support of the search warrant was inadequate because the name of the cellmate who turned over the letter was not given and there were no allegations of the cellmate's previous reliability as an informant. The district court denied the motion.

[12] Hendrix renews his argument that *Aguillar v. Texas*, 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), require the suppression of the letter due to insufficiencies in the affidavit supporting the warrant. However, the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), abandoned the two-pronged test for evaluating the sufficiency of such affidavits that had evolved from the *Aguillar* and *Spinelli* decisions. Instead, the Court held that the sufficiency of the affidavit and, specifically, the sufficiency of the allegations of reliability of an informant, should be assessed by evaluating the totality of the circumstances indicating that the informant's information is reliable. The Court stated that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles a [doubtful informant's] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at ——, 103 S.Ct. at 2329–30. Here, the affidavit contains a recitation of the conversation between the informant and Hendrix, in which Hendrix allegedly asked his cellmate to smuggle the letter out of the jail. The district court found that the description of the informant was so detailed that he was all but named in the affidavit (and in fact, Hendrix's counsel admitted that both he and his client knew the identity of the informant). We hold that the informant's reliability was substantiated by his first-hand account of the request that the letter be smuggled out of the jail and that the totality of the circumstances supports the issuance of the warrant.

■ In an unusual argument, Hendrix also contends that he was denied the effective assistance of counsel by his attorney's advice that he attempt to contact witnesses who could substantiate his alibi defense. Hendrix argues that his attorney should

---

**7.** In the few instances where such a strategy does clearly emerge from the record, the testimony elicited was merely cumulative. For instance, Merritt's attorney cross-examined Irene Anders to establish that she loved Jim Shepherd,

and thus had a motive to lie for him. However, Anders had already testified on direct that she lived with Shepherd, and that her relationship with him was "like being married."

have contacted potential witnesses himself, rather than instructing Hendrix to do so, or that at the least his attorney should have instructed Hendrix in the proper way to contact witnesses. In the context of this case, Hendrix's argument appears to be that his counsel should have foreseen that Hendrix would act improperly. Hendrix's claim that he was denied the effective assistance of counsel has no merit.

## III. Post Trial Motions and Sentencing

### A. Motion for New Trial

After trial had ended but before sentencing, Shepherd filed a *motion for a new trial* based on newly-discovered evidence, specifically, a statement by Hendrix to the officer who prepared Hendrix's presentence report that Shepherd was not involved in the robbery. Shepherd also presented two witnesses who testified that trial testimony placing Shepherd at Anders' office around the time that the getaway car was stolen was mistaken. The district judge found that the testimony of the two witnesses was available to Shepherd before trial and denied the motion without commencing on Hendrix's exculpatory statement.

 A defendant seeking a new trial on the basis of newly-discovered evidence must demonstrate that the evidence (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material; and (4) would probably result in acquittal at a new trial. *United States v. Hedman*, 655 F.2d 813, 814 (7th Cir.1981); Fed.R.Crim.P. 33. On appeal, Shepherd does not dispute the trial judge's finding that the testimony of the two proffered witnesses was available before trial. Instead, he argues that Hendrix's statement by itself should compel a new trial. We cannot agree, however, because Shepherd has not demonstrated any likelihood that the newly-discovered evidence would result in his acquittal in the event of a new trial.

Hendrix did not make his statement by way of affidavit in support of the motion; it is instead the unsworn statement of a convicted co-defendant and as such inherently suspect. Hendrix's lengthy criminal record would have made him easily impeachable, *see United States v. Rocco*, 587 F.2d 144 (3d Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), and Shepherd has given us no reason to believe that Hendrix could be induced to repeat his exculpatory statement at a future trial. We therefore cannot find that the district court abused its discretion in denying the motion.

### B. Sentencing

 During the sentencing of Merritt, the trial judge made the following comments:

In this particular situation the offense involved, the underlying bank robbery, there were a number of people in the bank at the time this occurred. Any of those people who were there at the time, I can only expect, were traumatized to varying degrees. One of the lady tellers in the bank at that time—I believe Rita Jackson—who apparently was already ill at the time and I believe was one of the tellers that was assaulted by the other robber, never was able to go back to work after that. She ended up dying ... not too long ago of cancer. I have no way of knowing to what extent this trauma exacerbated her condition. But it sure didn't help it. I am confident in my own mind that it probably had [an] effect on the speed with which her physical condition deteriorated.

Merritt contends that he had no notice that the trial judge would consider his actions a cause of Rita Jackson's subsequent death from cancer and that there is no evidence to support the inference that his conduct had any effect on Ms. Jackson. He cites *United States v. Harris*, 558 F.2d 366 (7th Cir.1977), for the proposition that a defendant is entitled to an opportunity to contest the allegations in the presentence report upon which the judge relies in sentencing. Merritt is correct about the holding in *Harris*, but fails to explain how he was denied that opportunity in this case. The fact of

Jackson's illness came out during trial and her death was noted in the presentence report. Merritt does not claim that he was denied access to this report, or that he was denied an opportunity to answer the report at sentencing. Moreover, there was evidence presented at trial concerning the effect of the robbery on Ms. Jackson that supports the trial judge's inference that the robbery had an adverse effect on her fragile health. Tellers at the bank testified that the robbers forced Rita Jackson to help them gather the money from the tellers' stations at gunpoint, and that during the robbery, Ms. Jackson fainted. We do not find that Merritt was denied due process in his sentencing hearing.

## IV.

We have considered carefully all other arguments advanced by the defendants in this appeal, including Hendrix's claim that the government's evidence against him was insufficient, and find them to be without merit. For the reasons expressed above, the judgments of conviction are affirmed.