Shaheed MADYUN a/k/a Arthur Lee
Mitchell, Petitioner–Appellant,

v.

Warren YOUNG, Superintendent, Wau-
pun Correctional Institution,
Respondent–Appellee.

No. 87–1926.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1988.

Decided July 26, 1988.

Order on Motion for Denial of
Rehearing Oct. 11, 1988.

**1030**

Thomas G. Wilmouth, Gerald P. Boyle, S.C., Milwaukee, Wis., for petitioner-appellant.

Daniel J. O'Brien, Asst. Atty. Gen., Donald J. Hanaway, Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before BAUER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner-appellant Shaheed Madyun appeals from a federal district court's denial of his petition for a writ of habeas corpus. Madyun challenged his Wisconsin convictions for armed robbery, attempted armed robbery, and first degree murder in the district court. Madyun argued that he was denied a fair trial when the trial court declined to sever his trial from that of his codefendant, Verdell Miles. Madyun contended that codefendant Miles's defense was clearly antagonistic to his own, thus he could not receive a fair trial without severance. The district judge denied Madyun's petition, holding that Madyun had failed to present his constitutional claim to the Wisconsin Supreme Court and further had failed to show sufficient cause and prejudice to overcome the default. We affirm.

## FACTS

Madyun and Miles were tried together on overlapping but not coextensive charges. The charges arose from a series of armed robberies in Milwaukee, Wisconsin on February 4 and 15, 1982. Each of the robberies involved two perpetrators, but prosecutors charged each of the codefendants only in those robberies in which that codefendant had been identified by one or more eyewitnesses. As a result, both Madyun and Miles were charged in connection with robberies at the Dunes Tavern (on February 15) and the Phoenix Inn Motel (on February 4). Madyun alone was charged in connection with a robbery at the Three B's Tavern (on February 15), while Miles alone was charged in connection with a robbery at Martin's Lounge (also on February 15). Madyun moved to sever his trial from Miles's several times during the trial, arguing that conflicting testimony rendered their defenses clearly antagonistic. The trial judge disagreed and allowed the joint trial to proceed.

In their defenses, Madyun and Miles attempted to rely on alibis and on establishing reasonable doubt with questioning of the prosecution's eyewitness identifications. Madyun claimed to have been at home on February 4 and he presented five witnesses to support his claim. Madyun also testified that he was in Waterloo, Iowa on February 15 and produced several witnesses who testified that they had seen him in Waterloo between February 14 and February 16. Miles, too, presented alibis for February 4 and 15.

Some of the evidence against Madyun was developed during the defense of codefendant Miles. Both Miles and one of his alibi witnesses contradicted Madyun's alibi for February 15, placing him in Milwaukee on that day. Miles also implicated Madyun in the murder of an attempted robbery victim at the Dunes Tavern. Miles admitted that he had once stolen the murder weapon, but claimed that he had subsequently sold it to Madyun, thus attempting to imply that Madyun had fired the fatal shot.

The state did not rely exclusively on Miles's testimony to implicate Madyun, however, but instead presented several of

its own witnesses, both to contradict Madyun's alibi and affirmatively to prove his guilt. Three prosecution witnesses directly contradicted Madyun's alibis for February 15. Two police officers, Detectives Weismueller and Rogers, testified that Madyun admitted to them that he was present, but denied involvement in the murder, at the Dunes Tavern in Milwaukee (not in Waterloo) on February 15, the date of the tavern robbery. Another prosecution witness, Rachel Moore, said that both Madyun and Miles came to her house in Milwaukee on the afternoon of February 15. In addition, six eyewitnesses, including at least one witness to each of the robberies for which Madyun was charged, identified Madyun as one of the robbers. Of those, three identified Madyun as one of the robbers at the Phoenix Inn Motel, two identified him as one of the robbers at the Dunes Tavern, and another identified him as one of the robbers at the Three B's Tavern. The jury found both Madyun and Miles guilty of all charges.

Madyun appealed his conviction to the Wisconsin Court of Appeals, challenging the trial judge's denial of Madyun's motion for severance. The parties filed their briefs and the court issued notice of submission of the case for decision on October 17, 1984. A month later, Madyun informed the court of appeals that he had fired his attorney and requested that he be allowed to withdraw his briefs and file new briefs raising additional issues. On November 29, the court denied Madyun's request as "untimely." The court sent both Madyun and his attorney its order refusing to allow withdrawal of the briefs because "the court is in the process of issuing its opinion." Neither the court's order nor anything else in the record before us conclusively establishes whether Madyun's attorney asked to withdraw from the case or whether the court approved a substitution of counsel.

On December 10, 1984, the Wisconsin Court of Appeals issued its decision affirming Madyun's conviction. The court sent a copy of the decision to Madyun's attorney, but not to Madyun. The attorney did not notify Madyun of the decision. On January 28, 1985, Madyun wrote the appellate court to inquire about his appeal. On February 21, 1985, Madyun received a copy of the appellate decision, date-stamped December 10, 1984. Wisconsin requires that any party wishing to challenge an adverse appellate decision in the Wisconsin Supreme Court must petition for review within thirty days of the decision. So, by the time Madyun knew he had lost his appeal, the time to petition the supreme court for review had expired. Madyun hired new counsel and, on July 3, 1985, applied for an extension of time to petition for review. The Wisconsin Supreme Court denied his petition on the same day, stating, "Pursuant to *First Wis. Nat'l Bank of Madison v. Nicholaou*, 87 Wis.2d 360, 274 N.W.2d 704 (1979), there is no provision for enlarging the time in which to file a petition for review."

On March 19, 1987, Madyun filed his petition for writ of habeas corpus. The respondent raised procedural default as a defense and the district court found in favor of the respondent. The court ruled that by failing to file a timely petition for review in the Wisconsin Supreme Court Madyun had forfeited his right to habeas review of his conviction. The court further held that Madyun had failed to show cause for or prejudice from the default, and so could not overcome the default. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Madyun now appeals.

## DISCUSSION

Federal courts possess the power to issue writs of habeas corpus in all cases in which constitutional violations compromise the fairness of state criminal trials. The statute that governs habeas corpus relief does not recognize exceptions to that power, but requires that "[t]he court shall ... dispose of the matter as law and justice require," 28 U.S.C. § 2243 (1982 & Supp. IV 1986), subject only to the requirement that the habeas petitioner must first exhaust all available state law remedies. *Id.* at § 2254(b). However, federal courts have constructed rules of waiver and forfeiture, limiting the exercise of the habeas

power in the interests of comity, judicial efficiency, and the like. *See, e.g., Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986) (cause and prejudice test lacks historical pedigree); *Smith v. Murray,* 477 U.S. 527, 541, 106 S.Ct. 2661, 2669, 91 L.Ed.2d 434 (1986) (Stevens, J., dissenting) (cause and prejudice standard "represents judicial lawmaking of the most unabashed form"); *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977) (Supreme Court has modified its views of habeas corpus despite absence of change in statutory language). This court has emphasized that the desire to promote judicial economy provides primary support for our rule precluding habeas review of constitutional claims that could have been presented to state courts, but were not.

> The forfeiture rule of *Wainwright* is designed to induce defendants to comply with state rules in time to prevent unnecessary subsequent proceedings. A timely objection or contention may prevent the error from occurring and spare multiple courts the need to review a judgment. If the claim may be pressed on collateral attack even though it was not raised at trial or on appeal, the incentive to raise the claim in time is diminished.

*Barrera v. Young,* 794 F.2d 1264, 1268 (7th Cir.1986) (citing *Nutall v. Greer,* 764 F.2d 462 (7th Cir.1985)). Therefore, a federal habeas petitioner who failed to comply with state procedural rules "must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier,* 477 U.S. at 486, 106 S.Ct. at 2644 (citing *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506). The district judge ruled that petitioner Madyun failed to establish either cause or prejudice in this case, and so could not prevail. Be-

cause Madyun must show both cause and prejudice to succeed, we need not resolve the question whether Madyun has shown cause for the default. *See Nutall,* 764 F.2d at 465. We agree with the district court's ruling on prejudice, and so we affirm the judgment of the district court.

## I. CAUSE

■ Madyun contends that he has shown cause for the default because he failed to receive notice of the Wisconsin Court of Appeals decision dismissing his appeal until after the thirty-day time period allowed for appeal of the decision had expired. However, Madyun does not state clearly whether he blames his attorney or the state for the failure of notice.

From the limited record before us,[1] blame for Madyun's lack of notice appears to fall on the attorney who represented him on the direct appeal. Although Madyun had notified both the appellate court and his attorney that he wished to dismiss the attorney, we find no indication in the record that the court relieved the attorney of his responsibility of defending his client. The court declined to allow Madyun to withdraw his brief and the record contains no evidence that the attorney formally sought to withdraw from the case. Moreover, the respondent alleges in his brief that the attorney failed to withdraw, and Madyun does not dispute that allegation. Thus, Madyun's attorney apparently remained counsel of record and the Wisconsin Court of Appeals can hardly be faulted for treating him as such and sending him, rather than Madyun, notice of its decision. *See Webb v. Keohane,* 804 F.2d 413, 415 (7th Cir.1986). Madyun's attorney thus bore the continuing duty to communicate with Madyun and to protect his interests. *See* Wisconsin Code of Professional Responsibility, Ch. 20 SCR 20.16(b) (West 1987) ("[A] lawyer may not withdraw from

---

1. Both this court and the district court have addressed this issue based on an abbreviated record that does not include the trial transcript or state court docket sheets. However, the parties have exhibited little or no disagreement over the contents of the full record, arguing only over its legal significance. In addition, we have before us the decision of the Wisconsin Court of Appeals, addressing precisely the issue now before us based on that court's review of

the full record. We presume that the state court's exposition of the facts is correct. 28 U.S.C. § 2254(d); *see also Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed. 2d 722 (1981) (§ 2254(d) applies in habeas corpus review of finding of fact made by state appellate courts); *Lewis v. Lane,* 832 F.2d 1446 (7th Cir.1987) (same). Under these circumstances, the limited record is sufficient to allow review. *See Nutall,* 764 F.2d at 468 n. 5.

employment until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice [of his or her withdrawal from representation] to his or her client ... [and] ... delivering all papers ... to which the client is entitled.") (effective through December 31, 1987); *see also id.* at 20:1.4 (duty to communicate with client) (effective beginning January 1, 1988); *id.* at 20:1.-16(d) (duties to client upon withdrawal) (effective beginning January 1, 1988).

 It is clear that Madyun has not shown cause for his default based on his former attorney's failure. Before Madyun can establish cause, he must demonstrate that his attorney rendered ineffective assistance of counsel as defined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Buelow v. Dickey,* 847 F.2d 420 (7th Cir.1988). The *Strickland* standard for ineffectiveness requires that the petitioner prove that counsel's performance fell below the level of "reasonable professional assistance" and that there is a "reasonable probability" that counsel's errors affected the case's outcome. *Strickland,* 466 U.S. at 687–96, 104 S.Ct. at 2064–69. Madyun has failed even to allege ineffective assistance under *Strickland,* so he has not established cause for his default based on the attorney's error. *Murray v. Carrier,* 477

U.S. at 489–90, 106 S.Ct. at 2646–47; *Buelow,* 847 F.2d at 426.[2]

It is possible, albeit unlikely, that the full record of this case might reveal that Madyun's attorney had been allowed to withdraw before the appeal was decided. If so, Madyun might have a stronger case, for the state could hardly contend that notice to a lawyer who has been allowed to withdraw constitutes notice to the lawyer's former client. On the other hand, this argument is seriously weakened by the four-month delay (from February 21 to July 3, 1985) between Madyun's receipt of the appellate decision and his filing of a motion for leave to file an untimely appeal, or the subsequent twenty-month delay (from July 3, 1985 to March 19, 1987) in petitioning for habeas corpus. These delays reflect a lack of diligence in pursuing relief. We need not decide this issue because we agree with the district judge's conclusion that Madyun has failed to establish actual prejudice arising from his failure to receive notice of the appellate decision. *See Nutall,* 764 F.2d at 465 (deciding procedural default issue on grounds of prejudice where record was not sufficient to determine cause conclusively).

## II. PREJUDICE

 The question whether to sever a multidefendant trial is addressed to the discretion of the trial court. *United States v. Peters,* 791 F.2d 1270, 1301 (7th Cir. 1986). In reviewing state court determina-

---

**2.** The respondent argues that such a claim would necessarily fail even if it were properly alleged. The respondent reasons that because the Wisconsin Supreme Court's review is discretionary and because there is no constitutional right to counsel on discretionary review, Madyun could not possibly show constitutionally ineffective assistance under *Strickland. See Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982); *Ross v. Moffitt,* 417 U.S. 600, 610, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). We do not agree with this reasoning because it is based on a *non sequitor.*

To demonstrate an independent constitutional violation based on ineffective assistance of counsel, a petitioner must demonstrate both that counsel was deficient and that counsel was constitutionally required. Showing cause implicates only the first of these issues, because the source of cause, unlike that of an independent constitutional violation, need not be attributable to state action. *See, e.g., Reed v. Ross,* 468 U.S. 1, 14, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984)

(failure to raise constitutional issue reasonably unknown to counsel provides cause). Thus, the Supreme Court has applied the *Strickland* standard for ineffectiveness of counsel in determining cause for a procedural default, *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645, but has not discussed either *Moffitt* or *Torna* in this context. Indeed, dicta in *Murray v. Carrier* and in *Smith v. Murray* suggest that ineffectiveness of counsel may provide cause for a default at all stages of proceedings, without regard to whether counsel is required at any particular stage. The crucial determination in deciding whether counsel's failures provide cause for a default is not at what stage in the proceedings those failures occurred, but rather how seriously deficient was counsel's performance. *See Murray v. Carrier,* 478 U.S. at 489–91, 106 S.Ct. at 2646–47 (same standard applies at all stages); *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 2665, 91 L.Ed.2d 434 (1986) (appellate defaults judged by same standard as defaults at trial). *But cf. Buelow,* 847 F.2d at 426 (discussing issue in dictum).

tions on severance, we will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair. *See, e.g., Stevenson v. Newsome,* 774 F.2d 1558, 1561 (11th Cir.1985); *Demps v. Wainwright,* 666 F.2d 224, 227 (5th Cir.1982); *Jenkins v. Bordenkircher,* 611 F.2d 162, 167–69 (6th Cir.1979); *see also Peters,* 791 F.2d at 1301 (in review of federal conviction, "[e]stablishing actual prejudice from a joint trial means that the defendant could not have a fair trial without severance."); *Haldane v. State,* 85 Wis.2d 182, 189, 270 N.W.2d 75, 78 (1978) (severance decisions reviewed under abuse of discretion standard). Joint trials may be found fundamentally unfair if codefendants present true "mutually antagonistic defenses" or if the "actual conduct" of the defense of one defendant prejudices that of another. *United States v. Ziperstein,* 601 F.2d 281, 285–86 (7th Cir.1979). From our review of the record, we find neither that Madyun's and Miles's defenses were mutually antagonistic toward each other, nor that the actual conduct of Miles's defense prejudiced Madyun. Because the absence of severance did not produce an unfair trial, Madyun has failed to establish prejudice arising from his procedural default.

Initially, we see no indication that Madyun's defense and that of codefendant Miles were mutually antagonistic. Defenses are not mutually antagonistic merely because one codefendant contests the other's version of the facts, or even offers evidence directly implicating the other. More than inconsistency alone is required to find codefendants' positions mutually antagonistic.

"There is a strong interest in joint trials of those who engaged in a common enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome. This is not to deny that a joint trial may create a risk that the jury will hear evidence that is inadmissible with respect to one defendant. Inconsistent defenses also may create prejudice. But as a rule evidence and arguments may be controlled by the court, and inconsistent defenses are not enough to require severance. Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact. Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials."

*United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.1987) (citations omitted) (emphasis in original); *see also, e.g., United States v. Peters,* 791 F.2d 1270, 1301–03 (7th Cir.1986); *United States v. Hendrix,* 752 F.2d 1226, 1232 (7th Cir.1985); *Ziperstein,* 601 F.2d at 285. Here, both defendants offered alibis and both questioned the accuracy of eyewitness testimony proffered by the state. In essence, each defendant argued, "I wasn't there." The jury could have believed both Miles and Madyun—that is, the jury could have found that neither of the defendants was present—so their defenses were not mutually antagonistic. *Compare De Luna v. United States,* 308 F.2d 140 (5th Cir.1962) (in trial for possession of illegal drugs, mutually antagonistic defenses were established where two codefendants conceded presence of drugs, but each contended that drugs were possessed solely by the other). Moreover, this case demonstrates the efficiency gains obtained through joint trials. Had Miles and Madyun been tried separately, the individual trials would have required double appearances by most of the same witnesses before separate juries. Moreover, each of the trials would address three of the four crimes at issue in the joint trial. And, of course, the separate trials would

require a waste of judicial resources in an already overburdened court system—two juries, two courtrooms, and nearly twice as much time. Unless the codefendants' defenses are truly, mutually antagonistic, the possibility of prejudice to the defendants does not outweigh the value of a joint trial. *Buljubasic*, 808 F.2d at 1263.

Neither do we find that the conduct of Miles's defense prejudiced Madyun. True, both Miles and one of Miles's defense witnesses damaged Madyun's alibi regarding the February 15 crimes by placing Madyun in Milwaukee on that date. However, the government also offered evidence damaging to Madyun's alibi, and offered more of it than did Miles. Three prosecution witnesses impeached Madyun's alibi for the February 15 crimes and three more affirmatively identified Madyun as one of the perpetrators of the February 15 robberies. In contrast, Miles's defense contained only the testimony of two witnesses questioning Madyun's alibi and none who directly implicated Madyun in the crimes. Thus, although Miles's defense caused some damage to Madyun's defense, the most numerous and damaging blows came from prosecution witnesses. As the Wisconsin Court of Appeals found, any evidence offered by Miles was "merely cumulative" to the testimony presented by the state. *State v. Madyun*, No. 83–2018–Cr, slip op. at 6 (Wis.App. December 10, 1984) [122 Wis.2d 774, 362 N.W.2d 446 (table)] (citing *Haldane v. State*, 85 Wis.2d 182, 189, 270 N.W.2d 75, 78 (1978)). We fail to see how Miles's offering of evidence which merely echoed similar evidence offered by the state could produce the sort of unfair prejudice prohibited by the Due Process Clause. *Cf. Ziperstein*, 601 F.2d at 288 ("mere reiteration of properly detrimental evidence" by codefendant does not violate Due Process). Nor could Miles's testimony regarding the weapon used in the murder at the Dunes Tavern have prejudiced Madyun. Wisconsin law makes aiders and

abetters of crimes equally liable to principals. *See* Wis.Stat.Ann. § 939.05 (West 1982). Both Madyun and Miles were charged and convicted as parties to the crime of murder and both of them were identified as participants in the robbery of the tavern by eyewitnesses. On these facts, Miles's testimony implying that Madyun was the "trigger man" in the Dunes Tavern was irrelevant to the jury's finding that Madyun was guilty of the murder. Thus, after reviewing the record, we do not agree that the conduct of Miles's defense resulted in prejudice to Madyun.

In summary, Madyun has failed to demonstrate either that his defense and Miles's were mutually antagonistic or that the actual conduct of Miles's defense caused him prejudice. Therefore, Madyun has failed to demonstrate prejudice arising out of his procedural default. And, because he has failed to demonstrate prejudice, he cannot overcome the default.[3] The judgment of the district court is

AFFIRMED.

### ON MOTION FOR REHEARING

IT IS ORDERED that the "MOTION TO FILE PETITION FOR RE-HEARING INSTANTER" is GRANTED and the petition for rehearing, although filed beyond the time limit, is accepted for filing as of August 19, 1988.

IT IS FURTHER ORDERED that the petition for rehearing is DENIED. Newly discovered evidence is a matter that must be pursued in the state court before it may serve as a basis for a Federal habeas corpus action. Similarly, the claim of ineffective assistance of counsel should have been raised earlier in state, appellate or federal district court proceedings.

IT IS ALSO FURTHER ORDERED that the "APPELLANT'S MOTION TO SUPPLEMENT, APPENDIX, AND ADDITIONAL MATERIALS" is DENIED as moot.

---

**3.** We may also grant habeas relief despite a procedural default, even in the absence of a showing of cause, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is innocent." *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2650. Madyun advances this argument weakly, if at all, in his reply brief. (He cites *Murray v. Carrier*, but does not develop the argument beyond a single sentence.) Even if Madyun were to make this argument, the record before us does not support it. Therefore, we are not persuaded.