Robert J. Raab, Barnett and Raab, Chicago, Ill., for petitioner.

Terence Madsen, Asst. Atty. Gen., Gary H. Schwartz, Chicago, Ill., for respondents.

**UNITED STATES of America ex rel. Earl PETERSON, Petitioner,**

v.

**James A. CHRANS, Warden, and Neil F. Hartigan, Attorney General of Illinois, Respondents.**

**No. 87 C 8977.**

United States District Court, N.D. Illinois, E.D.

March 22, 1990.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In January 1979, Earl Peterson and two other persons were indicted for murder, attempted murder, armed violence, and attempted armed robbery in Cook County, Illinois. One of Peterson's co-defendants pleaded guilty; Peterson and the remaining co-defendant were tried simultaneously with separate juries. Peterson and the prosecution picked the jury in Peterson's case on March 11–12, 1980. During selection, the trial judge criticized Peterson's attorney several times for writing down the addresses of prospective jurors. At one point, the trial court went so far as to prevent Peterson's attorney from even looking at his clerk's cards containing this information.

Shortly before lunch on March 12, 1980, the parties finished selecting Peterson's jury. After lunch, a deputy sheriff approached the bench. He told the court that one of the jurors "felt like he was the criminal. . . . He said they was writing down every word that was said, that they were taking notes on him and he thought maybe someone would, after this was over, and doesn't go their way, they would call his house and try to threaten him or talk to him about something." Supplemental Record B, 254.[1] Peterson's counsel first asked the court to "calm this juror down," *id.* at 256, and proceeded to argue with the court about Peterson's right to take notes. The trial judge initially indicated that he would not tell the juror anything. Peter-

---

1. Supplemental Record B is that portion of the record which the State filed with the court on August 15, 1989. This part of the record was missing when the State filed what it thought was the complete record when answering Peterson's petition in December 1987.

son's counsel then moved for a mistrial, without stating his grounds. *Id.* at 258.

The trial judge allowed Peterson's counsel to move for a mistrial, but reiterated his refusal to tell the jury anything about Peterson's right to have his counsel take notes. Peterson's counsel then asked "that the Court do something now to alleviate the fears of the juror who apparently is at this time in some way influenced against my client ... because of my action as his attorney in doing something." The court reassured counsel that he had not done anything wrong. Counsel and the court continued their debate over counsel's right to take notes. At the end of this discussion, Peterson's counsel asked the court once again to "make some effort to show the jurors nothing wrong occurred and the concerns they have should not exist." *Id.* at 258–60.

The court initially thought that "[t]he least said about it the better...." *Id.* at 260. Counsel dropped the matter. Later, after the jury for Peterson's co-defendant had heard opening statements, the court asked Peterson's jury to come to the courtroom to hear opening statements in Peterson's case. At this point the court admonished the jury that "during the course of the trial, as during the voir dire when you were selected, counsel may take notes, as counsel uses those notes in order to conduct the trial. These notes, though, should be no concern to you as those notes do not figure to be misused." Supplemental Record A, 28.[2]

The trial proceeded, and the jury found Peterson guilty. The trial court sentenced Peterson to concurrent prison terms of forty years for murder, fifteen years for attempted murder, and five years for attempted armed robbery. Peterson appealed to the Illinois Appellate Court, and raised the issue of juror bias. The court affirmed Peterson's conviction in an unpublished order. Peterson's counsel then filed a timely Petition to Appeal to the Illinois Supreme Court. Peterson's counsel omit-

ted the issue of juror bias from the petition, which the Illinois Supreme Court later denied.

Peterson petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Peterson first argued that the State of Illinois violated his constitutional rights by not allowing jurors at his trial to take notes. This court denied relief on this ground in an order dated September 26, 1989. Peterson's second argument was that his jury was biased against him, which deprived him of a right to an impartial jury under the Sixth and Fourteenth Amendments to the Constitution. The court appointed Peterson counsel to assist him in persuading the court that the court should grant the writ for this reason. Subsequently, Peterson amended his petition and raised a new ground for release, that his appellate counsel was ineffective for having omitted Peterson's claim of juror bias in Peterson's Petition to Appeal.

Peterson's claims are related. As the State rightly points out, Peterson could not seek release on account of a biased jury unless he shows cause for not having presented the issue of bias in his Petition to Appeal, and prejudice as a result. See *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Nutall v. Greer*, 764 F.2d 462, 463–65 (7th Cir.1985). Peterson blames his appellate attorney for having omitted the issue in the Petition, and insists that the attorney's conduct amounted to ineffective assistance. Ineffective assistance also is the theme of Peterson's second claim.

■ The parties invite the court to resolve a question which may have split the court of appeals for this circuit. The panels on both sides of the proto-debate begin with the proposition that there is no constitutional right to counsel to pursue discretionary appeals in the state courts. See *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). The court in *Buelow v. Dickey*, 847 F.2d 420, 426 (7th Cir.1988), reasoned from this (al-

---

**2.** Like Supplemental Record B, Supplemental Record A is a portion of the record which was missing when the State filed its answer. The State filed Supplemental Record A on March 27, 1989.

beit in dicta) that one could not claim cause sufficient to overcome *Wainwright*'s procedural default rule by alleging ineffective assistance by appellate counsel. The court in dicta in a later case, *Madyun v. Young*, 852 F.2d 1029, 1033 & n. 2 (7th Cir.1988), suggested that while ineffective assistance of appellate counsel may not violate the Constitution, one could claim ineffective assistance as a good cause under *Wainwright*.

This court need not resolve this dispute. *Buelow* and *Madyun* agree that Peterson cannot claim a constitutional violation from ineffective assistance of counsel on a discretionary appeal, and so Peterson's second amended claim fails. As for his first amended claim, even if this court adopted the more liberal approach to ineffective assistance recommended by *Madyun*, the court still would have to deny Peterson's petition for the writ. This is because the State did not violate Peterson's Sixth and Fourteenth Amendment rights to a trial by an impartial jury.

■ The several States are under the same obligation as the federal government to provide criminal defendants with impartial juries at trial. See *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1967); *Davis v. Warden, Joliet Corr. Inst. at Stateville*, 867 F.2d 1003, 1006 (7th Cir.1989). "When a question is raised before the jury retires about whether a juror can fulfill his duties with an open mind, the … court must determine that the juror is competent to proceed before continuing with the trial." *United States v. Thompson*, 744 F.2d 1065, 1068 (4th Cir.1984). See also *United States v. Taylor*, 554 F.2d 200, 202 (5th Cir.1977) ("The right to an impartial jury, free of fear," overcomes considerations such as costs of mistrial). Nevertheless, the Sixth Amendment does not instruct trial judges on how to insure impartiality among juries. Developing directions to prevent bias could be impossible. Bias appears in many ways, and seldom gives advance warning. There are also many ways of responding to an allegation of bias. Sometimes investigation will reveal that it does not exist. Other times,

an instruction from the court can dispel it. On still other occasions, the court can dismiss the biased juror, or take the ultimate step of declaring a mistrial. Recognizing how difficult it is to treat bias or suspected bias, the courts have interpreted the Sixth Amendment as giving wide discretion to the trial judge to respond to allegations of bias. See *United States v. Hendrix*, 549 F.2d 1225, 1227–29 (9th Cir.1977); *United States v. Chiantese*, 582 F.2d 974, 978 (5th Cir.1978); *Thompson*, 744 F.2d at 1068; *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir.1985); *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986).

The first decision a trial court must make in responding to an allegation of bias is whether to inquire into it, and if so, when. There are only a few instances when a trial court must immediately investigate allegations of juror bias. See *Chiantese*, 582 F.2d at 979 (must investigate allegations of improper influence from outside sources or discussions about the case among jurors prior to deliberations); *United States v. Doe*, 513 F.2d 709, 711 (1st Cir.1975) (must investigate private communications between jurors and others); *Shackelford*, 777 F.2d at 1145 (same); *Bradshaw*, 787 F.2d at 1390 (must investigate when court learns of actual bias). Outside of these instances, an investigation is prudent, but the Constitution does not demand it. For example, if the trial court has reason to believe that the person making the allegation is untrustworthy, or that the bias is not serious, it may postpone investigating the allegation until later, or conduct only a limited inquiry. See *Hendrix*, 549 F.2d at 1227–29 (allegations from relatives of defendant about juror's general attitudes towards drug merchants; Sixth Amendment allowed trial court to postpone inquiry until after verdict and to inquire only into source of allegations); *United States v. Kelly*, 749 F.2d 1541, 1551–52 (11th Cir.1985) (Sixth Amendment allows trial court not to question jury about allegations of bias made by excused juror whom trial court found to be incredible).

 The influence upon the juror in this case did not come from the outside, nor was it a product of impermissible conversations among jurors. Further, there is no evidence that the juror was actually biased against Peterson. The record reveals only a juror who was concerned about note-taking by lawyers. The courtroom deputy did not report how the juror's concerns influenced his view of Peterson's guilt or innocence. If the juror feared Peterson, it is plausible that he actually could have been biased in Peterson's favor, thinking that an acquittal would save him from retaliation.

Because there is no indication that forces outside of the courtroom were affecting Peterson's fearful juror, nor any evidence that the juror was actually biased, this court cannot say that the trial judge abused his discretion in declining to question the juror. By this the court does not imply that it approves of the trial judge's handling of this matter. Investigation probably would not have taken much time. Further, once his inquiry was complete, the judge could have made a factual determination about the extent of the juror's bias. Had the trial judge found that the juror was not biased, all of the courts which have reviewed this case—including this court—essentially could have stopped their work right there. A reviewing court usually will accept a trial judge's factual determination before it defers to a judge's exercise of discretion.[3]

Nevertheless, the court cannot say that the trial court judge abused his discretion in failing to investigate the allegations of juror bias in this matter. The court also cannot hold that the trial judge abused his discretion in coping with the allegations of bias. Indeed, the only specific request Peterson's counsel made of the court was to reassure the jury that counsel had a right to take notes. The trial judge complied with this request at the earliest opportunity. The courtroom deputy did not report bias, and Peterson's counsel never gave bias as his ground for moving for a mistrial. The trial court acted within its discretion, consistent with the Sixth Amendment's guarantee of an impartial jury.

The court denies Earl Peterson's petition for a writ of habeas corpus.

---

**3.** The State asserts that by allowing the trial to proceed, the trial judge implicitly found that the juror in question was not biased, and that this court must presume that finding was correct. See 28 U.S.C. § 2254(d); *Patton v. Yount*, 467 U.S. 1025, 1036–37, 104 S.Ct. 2885, 2891–92, 81 L.Ed.2d 847 (1984). The court has reviewed the record and finds nothing which suggests that the trial judge made such a finding. Even if he had made an explicit finding on the question, this court would be compelled to ignore it, as the judge would have made such a determination without questioning anyone, let alone the juror. See *Ray v. Duckworth*, 881 F.2d 512, 515–16 (7th Cir.1989) (court need not accept findings of state court when findings lack fair support in the record).