968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Darrell CARTER, Petitioner/Appellant,
v.
Howard PETERS, et al., Respondents-Appellees.
 No. 91-1229.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 16, 1992.*
Decided June 29, 1992.
 
 Before BAUER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Darrell Carter petitioned for a writ of habeas corpus, 28 U.S.C. § 2254, challenging (1) the trial court's refusal to sever his case from a co-defendant's case and (2) the sufficiency of the evidence. The district court denied the petition, and we affirm.
 
 I. BACKGROUND
 
 2
 Darrell Carter and Gerald Chamberlin were present when their friend Norman Gates shot and killed John Thomas. Carter, Chamberlin and Gates were all charged with Thomas's murder. Before trial, both Chamberlin and Carter alleged that their defenses were antagonistic with Gates's defense, and both moved for a severance. Chamberlin was granted the severance; Carter was not.
 
 
 3
 At trial, Gates and Carter retained separate attorneys and pursued separate defenses. Gates claimed that Chamberlin, a leader of Gates's street gang, forced him to shoot. Carter claimed that he did not know, until the shooting, that Gates planned to kill Thomas.
 
 
 4
 Each defendant testified on his own behalf at trial, neither giving an account completely consistent with the other defendant's. The inconsistencies prompted Gates's counsel to question Carter's credibility in his closing statement.
 
 
 5
 Also testifying at trial was Ronnie Harris, Carter's ex-cellmate. Harris said that he and Carter had discussed the murder several times. According to Harris, Carter had admitted that Thomas had owed him drug money. Because of the debt, Carter had plotted with Chamberlin and Gates to kill Thomas.
 
 
 6
 Both defendants were convicted of murder, Gates as the triggerman and Carter on an accountability theory. Carter exhausted his state remedies then filed a petition for a writ of habeas corpus in federal district court. 28 U.S.C. § 2254. The district court denied the petition, and Carter appeals.
 
 II. DISCUSSION
 A. Severance of the Trials
 
 7
 This court imposes a formidable burden on defendants seeking reversal based on the denial of a severance motion. "We will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair." Madyun v. Young, 852 F.2d 1029, 1034 (7th Cir.1988). A trial is fundamentally unfair only if it probably caused the "conviction of an innocent person." Thompkins v. Cohen, No. 90-1207, slip op. at 5 (June 3, 1992).
 
 
 8
 Carter attempts to prove unfairness by arguing (1) that the defenses introduced at trial were "mutually antagonistic" and (2) that Gate's attorney prejudiced his case. See Madyun, 852 F.2d at 1035. Both these claims are meritless.
 
 
 9
 The defenses presented by Carter and Gates were not inconsistent enough to be "mutually antagonistic." Inconsistent defenses only require severance if irreconcilable or mutually exclusive, meaning that accepting one defendant's defense would preclude acquittal of the other defendant. Id. (quoting United States v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir.1987)). In Carter's case, the jury could have believed both that Carter never knew about the shooting and that Gates was compelled to commit the murder.
 
 
 10
 Also invalid is Carter's claim that Gates's attorney prejudiced the trial. Conduct by a co-defendant's attorney does not warrant reversal if it is "merely cumulative of the government's presentation. id. at 1035. We will not reverse because of fingerpointing or isolated incidents in a long trial. Id.
 
 
 11
 Under this standard, the comments from Gates's attorney do not warrant relief. The only objectionable statement, according to Carter, was an isolated passage in the 1026-page transcript, where the attorney said:
 
 
 12
 [Carter's counsel] would have you believe this, everything Darrell Carter says is believable, everything Norman Gates says is not believable. Well, I think the other testimony or evidence in the case bears out my client, relative to what happened from the time of the incident up until the time they were arrested.
 
 
 13
 This statement reiterated problems with Carter's credibility, an issue that the government alluded to throughout the trial.
 
 B. Sufficiency of the Evidence
 
 14
 Carter also argues that the jury lacked sufficient evidence to convict him of murder on an accountability theory. Under Illinois law, Carter is accountable for another's actions when
 
 
 15
 ... either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.
 
 
 16
 Ill.Rev.Stat. ch. 38, para. 5-2. Like all defendants seeking to reverse convictions because of insufficiency of the evidence, Carter faces a heavy burden. To obtain a relief, Carter must show that no "rational jury could have found [him] guilty." United States ex rel. Wandick v. Chrans, 869 F.2d 1086, 1089 (7th Cir.1989).
 
 
 17
 In Carter's case, Ronnie Harris's testimony allowed a rational jury to convict. According to Harris, Carter had admitted that Thomas had owed him drug money and that he had plotted with Chamberlin and Gates to murder Thomas. Chamberlin and Carter were to bring Thomas to Joliet, and Gates was to kill him.
 
 
 18
 Carter's challenges to Harris' credibility do not require us to reverse. This court has "no license to redetermine the credibility of a witness whose demeanor was observed by the state trial court and not by us." Id. at 1089. We will only second-guess the jury if the witness' account is "so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). Carter never alleges that Harris's testimony was inconsistent or implausible on its face. He claims only that Harris received a deal in exchange for his testimony and learned certain details about Carter's case by rummaging though his belongings. This information was before the jury, who had the opportunity to assess it.
 
 
 19
 We therefore AFFIRM the district court's denial of a writ of habeas corpus.
 
 
 
 *
 On June 8, 1992, the parties filed a "joint motion to submit case on briefs without oral argument." After considering the motion, we concluded that oral argument would not be helpful to the court and submitted the case on the briefs. See Fed.R.App.P. 34(a); Cir.R. 34(f)