THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNICE LEWIS, Defendant-Appellant.

Fourth District   No. 15783

Opinion filed November 12, 1980.

Dobrovolny & Souk, of Urbana (James E. Souk, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago, and Patrick M. Walsh, State's Attorney, of Decatur (Melbourne A. Noel, Jr., Thomas E. Holum, Susan M. Sherwin, and Neal Goodfriend, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

A jury convicted the defendant of murder, armed robbery, and aggravated kidnaping for her alleged participation in a bank robbery in

Decatur, Illinois; a woman was kidnaped and a bank guard killed during the preparation for and execution of the robbery. The defendant was sentenced to concurrent prison terms of 40, 30, and 30 years.

The defendant argues five issues on appeal; we will discuss only two: Whether the defendant was denied the effective assistance of counsel because her court-appointed attorney had a conflict of interest, and whether the defendant was proved guilty beyond a reasonable doubt.

The defendant argues that because her court-appointed attorney, Scott Diamond, knew the murder victim, Donald Bivens, she was denied the effective assistance of counsel. Although not conceding that a conflict of interest existed in this case, the State focuses its argument on the defendant's supposed consent to representation by Diamond.

Diamond recognized the existence of a conflict of interest early in the case: In a petition filed the day after he had been appointed to represent the defendant, Diamond sought instruction from the trial court on whether to proceed with or to withdraw from the case. According to the petition and Diamond's testimony at a hearing held to consider the question, Diamond, through his work as a public defender, had known Bivens for six years; before becoming a guard, Bivens had worked as a probation officer for Macon County. Their friendship was based on work rather than on social visits to each other's homes. Diamond attended Bivens' funeral. Diamond maintained in his petition and at the hearing that his friendship with the victim would not affect his handling of the defense.

■■■ Conflicts of interest arise when an attorney's relationship to another implicates his loyalty to a particular client. In *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, the supreme court said:

"The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel." (40 Ill. 2d 109, 111, 239 N.E.2d 441, 443.)

In a long line of cases beginning with *Stoval*, the supreme court has required a new trial when a conflict of interest exists; the defendant does not need to show that the conflict affected the quality of the attorney's representation. (*People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569; *Stoval.*) This right to counsel unfettered by conflicts of interest applies regardless of a defendant's guilt or innocence.

*Stoval* involved a law firm's simultaneous representation of two clients with potentially conflicting interests: The law firm with which the defendant's court-appointed attorney was associated also represented the owner of the jewelry store that the defendant was charged with robbing. The court found that a conflict of interest existed and said that a

defendant need not show actual prejudice to justify remand of the case for a new trial:

> "There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice." 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.

Although representation of clients with potentially opposing interests, whether simultaneous (*Fife*; *Coslet*; *Stoval*) or successive (*Kester*), is the most common source of conflicts of interest, personal associations may also cast doubt on an attorney's ability to maintain the unswerving and undivided loyalty to a particular client that is a chief foundation of the process of determining guilt or innocence through adversary proceedings. Personal feelings rather than professional concerns may actually put the greater strain on an appointed attorney's duty to a criminal defendant.

We note that a venireman's personal acquaintance with members of and witnesses for the prosecution do not entitle defense counsel to challenge him for cause. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) *Cole* held that jurors need not be free "from suspicions of bias"; in explaining its decision that a jury does not lose its aura of impartiality even when a juror with suspected biases is a member, the court reached back to an 1837 English decision as the source of the misapprehension that jurors must be free from even supposed rather than actual biases.

As *Stoval* and its progeny show, an attorney's duty to his client is not similarly based on a misapprehension. Given the importance of a criminal defendant's right to representation by counsel whose loyalty is unquestioned, our guessing at the extent of the personal feelings between Diamond and Bivens would be inappropriate. The record here discloses facts of Diamond's relationship with the victim that, without further explanation, suggest a possible and delicate conflict of interest.

A defendant is presumed not to have waived his right to representation by counsel untainted by any conflict of interest. (*Fife*; *Stoval.*) To show that the defendant waived her objection and knowingly accepted representation by Diamond the State refers to the transcript of a hearing held sometime before trial. Given our resolution of this matter we will not discuss the defendant's objections to the inclusion of this transcript in the

record on appeal. Diamond testified at the hearing and summarized the details of his friendship with Bivens. Following the testimony of Diamond and another person charged in connection with these crimes, Lewis testified:

"THE COURT: Will you state your name?

A. Bernice Lewis.

THE COURT: You are one of the defendants in this case?

A. Yes, sir, I am.

THE COURT: You have heard the statement made by the Public Defender, Mr. Diamond. You have heard the statement under oath made by [a codefendant], is this not correct?

A. Yes, sir, I heard it.

THE COURT: What is your position with respect to the petition that Mr. Diamond has filed?

A. I would like to have him represent me if he would.

MR. DIAMOND: I will be willing to represent the lady. It has been raised. I want to make sure it is on the record so there is no question about it."

This was not an effective waiver. The trial court did not explain to the defendant the potential and obvious problems that could arise with a conflict of interest such as this. *Stoval*, which also found a waiver ineffective, said:

"The difficulty in appropriately advising an accused of this right almost directs that counsel, especially one appointed, be free from any such conflict." (40 Ill. 2d 109, 114, 239 N.E.2d 441, 444.)

This statement nearly requires automatic disqualification whenever a conflict of interest exists.

Without detailing the lengthy testimony taken at trial, we find that the evidence was sufficient to establish guilt of these offenses beyond a reasonable doubt. An accomplice, Maurice Farris, supplied the major portion of the evidence against the defendant. Farris had been granted immunity from prosecution in exchange for his testimony. He described in detail the planning and preparation that preceded the offenses. Farris was also present during the kidnaping but not during the robbery and murder, although he waited for the defendant and her codefendant to complete the robbery and then drove them to a safe house. The codefendant told Farris that the guard at the bank had been shot. Other witnesses added evidence describing the defendant's stay in Decatur and flight from that city, the disposal of items taken in the robbery, the discovery of a billfold containing the defendant's alias in the car used until the time the kidnap victim's car was taken, and the defendant's fingerprint on a piece of currency stolen in the robbery.

On this basis, then, the evidence was sufficient to support the jury's

conclusion that the defendant was directly involved in the robbery and accountable for the kidnaping and murder.

We therefore reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

MILLS, P. J., and TRAPP, J., concur.