**James T. STOMNER, Petitioner–Appellant,**

v.

**Darrell KOLB and the Attorney General of the State of Wisconsin, Respondents–Appellees.**

No. 89–1890.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1990.

Decided June 4, 1990.

As Amended June 18, 1990.

Rehearing Denied July 26, 1990.

1124

Mark A. Eisenberg, Madison, Wis., for petitioner-appellant.

Donald J. Hanaway, Atty. Gen., Thomas Balistreri, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondents-appellees.

Before WOOD, Jr., COFFEY, Circuit Judges, and NOLAND, Senior District Judge.*

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

NOLAND, Senior District Judge.

James T. Stomner petitioned the district court for writ of habeas corpus alleging that he was denied a fair trial in violation of his due process rights. To support his claim, he alleges that the denial of a request for severance from the trial of a codefendant violated his due process rights. In addition, he maintains that numerous evidentiary rulings by the trial court denied him a fair trial. The district court denied the petition. For the reasons set forth below, we affirm.

## I. Facts

On October 14, 1983, Joseph Hecht murdered Caroline Hudson in Madison, Wisconsin. He was arrested that same day in Milwaukee. Hecht admitted that he shot Hudson five times in the chest and he pleaded guilty to the charges. Hecht planned the killing before it happened and stated that Richard Wheeler had hired him. Hecht denied that Wheeler expressly asked him to "kill" his ex-wife but Hecht said several times that Wheeler asked him to "harm" her. Hecht said he assumed that he was to kill her.

Three months before hiring Hecht, Wheeler told his ex-wife she ought to be shot. Hecht testified that Wheeler agreed to pay him $10,000 for his services and eventually paid him $9,300. The jury could therefore reasonably conclude that Wheeler and Hecht conspired to kill, or at least harm, Hudson.

Hecht and Wheeler were strangers. Hecht lived in Texas and Wheeler lived in Wisconsin. Someone had to put them in contact with one another. James T. Stomner was a friend of both Wheeler and Hecht.

During the summer of 1983, Stomner saw Wheeler several times and knew that Wheeler was having problems with his ex-wife. She had attempted to increase the amount of support Wheeler was required to pay. Stomner knew that Hecht had been involved in criminal activity and he

knew that Hecht was a fugitive from justice during that summer. He thought that at one time Hecht had acted as an enforcer, threatening or beating up people to collect money owed to others. Wheeler testified that Stomner told him that he had a friend who could solve Wheeler's problem.

At 9:46 a.m. on September 30, 1983, less than two weeks before the murder, Stomner called Wheeler from Florida. Hecht was with Stomner when he made the call. About four hours later, Hecht called Wheeler to make his first tentative arrangements to obtain money to "harm" Wheeler's ex-wife. Although Stomner denied that he gave Wheeler's unlisted telephone number to Hecht, the jury could infer otherwise.

On October 4, 1983, Wheeler learned that his ex-wife had started legal proceedings to triple the child support he would have to pay to her and to impose a $20,000 lien on his property. The same day, Hecht called Stomner at 7:28 p.m., called Wheeler two minutes later, and again called Stomner ten minutes after calling Wheeler.

Wheeler told Hecht on October 4 that he did not have enough money to pay for Hecht's services. Hecht replied that Wheeler should send what he had and Hecht would hold Stomner responsible for the balance. Hecht told Wheeler to reach him through Stomner if it was necessary to talk again. It was necessary. Wheeler had forgotten to tell Hecht that Hudson's husband was a police officer. Wheeler therefore called Stomner on October 7.

Between October 7 and October 14, the day of the murder, Hecht called Stomner almost every day. Hecht flew from Texas to Wisconsin on October 11 and called Stomner several times each day thereafter through the time of the murder. Hecht killed Wheeler's ex-wife in Madison about 7:00 a.m. on October 14. Two hours later he called Stomner, seeking money to escape from the state. About 2:00 p.m. that afternoon he again called Stomner from Milwaukee. Hecht was arrested shortly thereafter.

Stomner and Wheeler were charged with first degree murder under Wis.Stat. § 939.05. The cases were tried jointly to a jury and both Stomner and Wheeler were convicted. On appeal, Stomner argued that his trial should have been severed from Wheeler's and that the court erred in various evidentiary rulings. The Wisconsin appellate court held that the trial court had not abused its discretion. *State v. Stomner*, 141 Wis.2d 973, 414 N.W.2d 318 (Wis. Ct.App.1987). The Wisconsin Supreme Court denied Stomner's petition for review. *State v. Stomner*, 142 Wis.2d 949, 417 N.W.2d 896 (Wis.1987) (Table). Stomner then filed a petition for writ of habeas corpus in federal district court. He again alleged that the refusal to sever the trial from that of Wheeler's violated his due process rights and that evidentiary rulings denied him a fair trial. The district court denied the petition. The court held that the acceptance of Wheeler's defense would not preclude Stomner's acquittal. Therefore, the defenses were not mutually antagonistic and the refusal to sever the trials was not an abuse of discretion. The court also held that the evidentiary rulings did not deny Stomner a fair trial.

## II. Analysis

### A. *Severance*

 Petitioner first moved for severance in a pretrial motion. Wheeler's attorney advised the trial court that in the event of a joint trial, Wheeler would invoke his privilege against self incrimination and not testify. The trial court denied the severance, finding that there did not appear to be antagonistic defenses at that time. The motion for severance was renewed, two weeks into the trial, when Wheeler's attorney made his opening statement. The court again denied the motion.

 Severance decisions are reviewed under an abuse of discretion standard. *United States v. Rollins*, 862 F.2d 1282, 1289 (7th Cir.1986), *cert. denied*, — U.S. ——, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989).[1] We have addressed the issue on previous occasions:

1. Under Wisconsin law, the court may grant a severance of defendants:

In reviewing state court determinations on severance, we will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair. (citations omitted). Joint trials may be found fundamentally unfair if codefendants present true "mutually antagonistic defenses" or if the "actual conduct" of the defense of one defendant prejudices that of another. *United States v. Ziperstein*, 601 F.2d 281, 285–86 (7th Cir.1979).

*Madyun v. Young*, 852 F.2d 1029, 1033–34 (7th Cir.1988); *see United States v. Turk*, 870 F.2d 1304 (7th Cir.1989); *United States v. Bruun*, 809 F.2d 397 (7th Cir.1987); *United States v. Oxford*, 735 F.2d 276 (7th Cir.1984). Review is limited to the state of the record at the time the motion for severance was made. *Rollins*, 862 F.2d at 1289. From our review of the record, we find neither that Stomner's and Wheeler's defenses were mutually antagonistic toward each other nor that the actual conduct of Wheeler's defense prejudiced Stomner.

We see little indication that the defense of Stomner and that of codefendant Wheeler were mutually antagonistic. Stomner's defense was that he had no knowledge of and was not involved in any conspiracy to scare, harm, or murder Carolyn Hudson. Stomner claimed that his involvement with Wheeler and Hecht concerned the transportation of a boat to Florida. Wheeler's defense was that he, Stomner, and Hecht conspired to "scare" Hudson and not to kill her, and that the killing was not the natural and probable consequence of the conspiracy. However, "defenses are not mutually antagonistic merely because one codefendant contests the other's version of the facts, or even offers evidence directly implicating the other. More than inconsistency alone is required to find codefendant's

positions mutually antagonistic." *Madyun*, 852 F.2d at 1034.

Here, both defendants maintained that they were not involved in any conspiracy to kill Hudson. We have emphasized the benefits of joint trials:

> There is a strong interest in joint trials of those who engaged in a common enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome. This is not to deny that a joint trial may create a risk that the jury will hear evidence that is inadmissible with respect to one defendant. Inconsistent defenses also may create prejudice. But as a rule evidence and arguments may be controlled by the court, and inconsistent defenses are not enough to require severance. Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact. Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials.

*United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.) (citations omitted) (emphasis in original), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). The making of Wheeler's defense did not lead to an unjustifiable inference of Stomner's guilt. Wheeler asserted that he and

---

If it appears that a defendant or the state is prejudiced by a joinder of crimes or defendants in a complaint, information, or indictment, or by such joinder of trial together.... Wis.Stat. § 971.12(3) (1987–1988). Wisconsin's statute is taken from Rule 14 of the Federal Rules of Criminal Procedure. The trial court has discretion to determine whether the public interest in joint trials is outweighed by the prejudice to a defendant's right to a fair trial. *Haldane v. State*, 85 Wis.2d 182, 189, 270 N.W.2d 75, 78 (1978).

Stomner were involved in a conspiracy merely to scare Hudson, not that Stomner was guilty of conspiracy to commit murder. In fact, both defendants could have been acquitted. The jurors could have concluded that murder was not the natural and probable consequence of the crime intended by Stomner and Wheeler. The acceptance of Wheeler's defense did not preclude acquittal of Stomner. Therefore, the defenses were not mutually antagonistic and it was not necessary to hold separate trials.

 Even if the defenses are not mutually antagonistic, "[s]everance can be granted if the actual conduct of one defendant's defense unduly prejudices his or her co-defendant." *United States v. Rollins,* 862 F.2d 1282, 1290 (7th Cir.1988); *see United States v. Banks,* 687 F.2d 967 (7th Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1208, 75 L.Ed.2d 448 (1983). However, we do not find that the conduct of Wheeler's defense prejudiced Stomner. "The defendant bears the burden of demonstrating undue prejudice resulting from the joint trial. To meet this burden, [Stomner] must establish that the joint trial was unfair, not merely that [he] would have had a better chance at acquittal if [he] had been tried separately." *Id.* We cannot find that Stomner's trial was fundamentally unfair. Stomner's and Wheeler's defenses conflicted but were not mutually antagonistic. The fact that Stomner denied the existence of a conspiracy while Wheeler admitted to an agreement to scare Hudson did not unduly prejudice Stomner. Although Wheeler's defense caused some damage to Stomner's, more damaging blows came as a result of the prosecution's contention that both were involved in a conspiracy to commit murder. Moreover, any evidence offered by Wheeler was merely cumulative to that presented by the state.[2] In separate trials, the prosecution likely would have been able to present most of Wheeler's testimony in the trial against Stomner. No prejudice derives from the admission of evidence at a joint trial when the same

evidence would be admissible at separate trials. *United States v. Sababu,* 891 F.2d 1308, 1331 (7th Cir.1989). The court did not abuse its discretion in denying the severance motion.

### B. *Evidentiary Rulings*

 The admissibility of evidence in a state court proceeding is primarily a matter of state law and a federal court will not review the state court rulings to determine whether the court correctly applied the law. *Burrus v. Young,* 808 F.2d 578, 580–81 (7th Cir.1986). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). On a petition for writ of habeas corpus, a federal court will not review evidentiary questions unless "there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982); *see also Cramer v. Fahner,* 683 F.2d 1376 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Petitioner contends that the cumulative effect of the following three evidentiary rulings denied him a fundamentally fair trial:

1. The trial court's exclusion of the state's offer to dismiss;
2. the trial court's exclusion of psychiatric testimony concerning Hecht's character; and
3. the trial court's admission of evidence of other crimes.

This Court will not review the Wisconsin Court of Appeals' interpretation of state law. *Burrus,* 808 F.2d at 581.

### 1. Offer to Dismiss

The trial court ruled that Stomner's counsel could not ask Detective Grann whether Grann, another detective and the deputy district attorney had made an

---

**2.** Wheeler's counsel, in closing argument, attempted to shift the blame to Hecht and Stomner. No evidence was ever presented on this theory. Closing arguments are not evidence

and the jurors were so instructed. *See United States v. Rollins,* 862 F.2d 1282 (7th Cir.1988). The closing argument did not render Stomner's trial fundamentally unfair.

offer to Stomner which he did not accept. According to Stomner, the offer was to dismiss the charges against him if he testified to a link or connection between Hecht and Wheeler. Stomner argued that the jury should have this information. The jurors could infer from it that Stomner was truthful when he declined the offer, since had Stomner been able to provide the link, he would have been a fool not to do so.

*State v. Stomner*, 141 Wis.2d 973, 414 N.W.2d 318 (Wis.Ct.App.1987). The trial court determined that the evidence was inadmissible hearsay concerning a prior consistent statement. The state has the power to apply evidentiary rules which serve the interests of fairness and reliability. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). In addition, the evidence was inadmissible evidence of a plea bargain under Wis.Stat. § 904.10. The exclusion of this evidence did not result in a fundamentally unfair trial.

### 2. Psychiatric Testimony

The accused has a fundamental right to present witnesses in his own behalf. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). This right does not require a trial court to permit any proposed defense expert to take the stand. *Burrus*, 808 F.2d at 581. Stomner wanted to rebut an inference that he had discussed the proposed murder in a series of telephone calls with Hecht. Stomner proffered the testimony of a psychiatrist on the characteristics of Hecht's personality. The trial court excluded the evidence because Stomner proposed to use the evidence to support an inference regarding the subject matter of conversations held years before the psychiatrist had treated Hecht. *State v. Stomner*, 141 Wis.2d 973, 414 N.W.2d 318 (Wis.Ct.App.1987). The court concluded that the evidence would confuse the jury and invade the jury's role of assessing Hecht's credibility. *Id.* We cannot find that the exclusion resulted in a fundamentally unfair trial.

### 3. Other Crimes Evidence

On direct examination, Stomner testified that he had no prior knowledge that Hecht could be hired for criminal activity. On cross-examination the state asked Stomner whether he had hired Hecht in 1982 for a car burning incident; Stomner responded in the negative. We find that this questioning did not create a fundamentally unfair trial. The introduction of improper evidence of other crimes will not support a grant of the petitioner's writ of habeas corpus. *See United States ex rel. Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir.), *cert. denied*, 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 363 (1985).

Finally, Stomner argues that the cumulative effect of the three evidentiary rulings deprived him of a fair trial. None of the three rulings, when considered in isolation, resulted in a fundamentally unfair trial. We find no merit in the contention that the three innocuous rulings, when considered cumulatively, resulted in a fundamentally unfair trial of constitutional dimension.

### III. Conclusion

Petitioner has failed to demonstrate either that his defense and a codefendant's were mutually antagonistic or that he was prejudiced by his joint trial with codefendant. Further, the evidentiary rulings of the trial court did not result in a fundamentally unfair trial. Therefore, the district court's decision denying the petition for writ of habeas corpus is hereby AFFIRMED.