**Bernice LEWIS, Petitioner–Appellant,**

v.

**Jane E. HUCH and Neil F. Hartigan, Respondents–Appellees.**

**No. 89–2677.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1991.

Decided May 20, 1992.

Ginamarie A. Gaudio, Williams & Montgomery, Chicago, Ill., Thomas Broden, argued, University of Notre Dame, Notre Dame, Ind., for Bernice Lewis.

Mary B. Kenney, argued, Office of the State's Atty. of Cook County, Criminal Appeals Div., Chicago, Ill., for Jane E. Huch and Neil F. Hartigan.

Before COFFEY and EASTERBROOK, Circuit Judges, and CRABB, District Judge.[*]

COFFEY, Circuit Judge.

Bernice Lewis filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254 challenging her conviction in the Illinois state courts for murder, armed robbery and aggravated kidnapping. Lewis alleged that her state court conviction was obtained in violation of the United States Constitution because (1) she was denied her sixth amendment right to effective assistance of counsel because of her court-appointed counsel's conflict of interest and (2) the state trial court's denial of her motions for severance and for a mistrial violated her fourteenth amendment due process right to a fair trial. The district court denied Lewis' petition, and we affirm.

### I.

■ 28 U.S.C. § 2254(d) provides that factual findings of a state court are pre-sumed to be correct in a federal habeas corpus proceeding, if the findings are made after a hearing on the merits, and are fairly supported by the record.[1] This presumption applies to the factual findings of state appellate courts as well as state trial courts. *Madyun v. Young*, 852 F.2d 1029, 1032 n. 1 (7th Cir.1988) (citing *Summner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981)). Accordingly, we adopt the Illinois Supreme Court's following statement of facts in *People v. Bernice Lewis*, 88 Ill.2d 429, 429–435, 58 Ill.Dec. 743, 744–45, 430 N.E.2d 994, 995–96 (1981), *cert. denied, Lewis v. Illinois*, 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983):

"Defendant, Bernice Lewis, was convicted in a jury trial ... of murder, armed robbery and aggravated kidnapping in connection with the December 14, 1978, robbery of the Citizens National Bank in Decatur[, Illinois] and the death of Donald Bivens, Sr., a bank security guard. The appellate court [90 Ill.App.3d 220, 45 Ill.Dec. 546, 412 N.E.2d 1128 (Ill.App. 4 Dist.1980)] reversed, holding that defendant had been deprived of effective assistance of counsel, and ordered a new trial.

* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

1. 28 U.S.C. § 2254(d) provides, in part, that, "[i]n any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the state court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the state court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal Court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record ..."

§ 2254(d) also provides that if none of these eight exceptions are applicable, "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the state court was erroneous."

"Defendant, a resident of Des Moines, Iowa, was indicted with her brother, Cornelius Lewis, who had allegedly fired the shot that killed decedent. At defendant's arraignment on March 1, 1979, it was determined that the she was indigent and Scott Diamond, the Macon County public defender, was appointed to represent her. Attorney Diamond was also appointed to represent Willie Sangster, who had been separately charged with the same crimes. On March 2, 1979, the lawyer filed a petition for instructions as to whether he should continue to represent the defendant. The petition indicated that the attorney had known decedent due to the latter's prior position as an assistant probation officer and had attended decedent's funeral. The petition stated in part:

'That the Petitioner [Diamond] does not feel that the fact that he did know Mr. Bivens would have any effect on giving the Defendant a vigorous defense, however, Defendant claims that due to my relationship with Mr. Bivens, she feels that I cannot fairly defend her.'

A similar petition was filed with respect to Sangster. On March 9, 1979, a hearing was held to consider whether attorney Diamond should continue to represent defendant and Sangster. The attorney testified:

'The victim of the alleged murder was Donald Bivens, Sr. Donald Bivens, Sr. had formerly been assistant probation officer in Macon County and for approximately six years I have been Public Defender of Macon County. For six years I did have a working relationship with Mr. Bivens, although I did not ever visit him in his home. My relationship was basically at work and I did consider him a friend. The defendants have raised the issue whether or not they feel I could do a fair job for them due to my relationship with Mr. Bivens. It is true I did attend his funeral, but I personally feel if appointed, I would do my job and I would intend to perform my duty. As they have raised the issue, I feel I must bring the issue before the Court. For this reason, I am asking the Court for instructions whether or not I should proceed with the cases.'

Sangster was asked his position with respect to representation by attorney Diamond and replied:

'My position on that, Your Honor, is that I feel totally uncomfortable with him representing me because of the fact that we have had various conversations on this subject and I personally feel and I hope that the Court, I beg the Court to agree with me that this man's relationship with the person that was killed in the bank robbery was such that it would be utterly impossible for him to give me, to defend me with the enthusiasm that is necessary for me to get everything out of the law that I should get. I just don't feel that he can give that to me and I am sorry to say that my being black and the victim being white, unfortunately due to conditions of ours society, it is going to influence him. I do believe and I feel totally uncomfortable and I beg the court to relieve him from my case.'

Then the following exchange between the judge and defendant Bernice Lewis occurred:

'THE COURT: You have heard the statement made by the Public Defender, Mr. Diamond. You have heard the statement under oath made by Mr. Sangster, is this not correct?

A. Yes, sir, I heard it.

THE COURT: What is your position with respect to the petition that Mr. Diamond had filed?

A. I would like to have him represent me if he would.

MR. DIAMOND: I will be willing to represent the lady. It has been raised I want to make sure it is on the record so there is no question about it.

\* \* \* \* \* \*

THE COURT: Do you have any further statement?

A: No.'

At the end of the hearing, the judge stated:

'THE COURT: I am aware of no conflict, no good reason the Public Defender can't represent Miss Lewis.

\* \* \* \* \* \*

MR. DIAMOND: Do I understand I have been appointed for Miss Lewis?

THE COURT: Yes.'

"Sangster's case was continued, and defendant, with attorney Diamond representing her, went to trial with her brother."

After this recitation of the facts, the Illinois Supreme Court reversed the judgment of the appellate court, holding that Lewis had made a knowing and intelligent waiver of her right to object "to any supposed conflict of interest which her lawyer's acquaintance with the victim might pose," 88 Ill.2d at 436, 58 Ill.Dec. at 747, 430 N.E.2d at 998, and that, even taken on the merits, Lewis had not shown that Diamond's representation of her had resulted in any prejudice and therefore was not entitled to a new trial. 88 Ill.2d at 441, 58 Ill.Dec. at 749, 430 N.E.2d at 1000. The Illinois Supreme Court then remanded the case to the appellate court for consideration of Lewis' other arguments not addressed by the appellate court when it reversed her conviction. *Id.* at 442, 58 Ill. Dec. 743, 430 N.E.2d 994.

On remand, the Illinois appellate court rejected these arguments in an unpublished order issued April 13, 1982. One of those issues was Lewis' contention that the state trial court's denial of her motion to sever her trial from her brother's was grounds for reversal. Petitioner Lewis had argued before the state trial court that she feared her brother's criminal record might be used to impeach him, and thus prejudice her. Cornelius Lewis was not called to testify, but a government witness did refer to Cornelius Lewis' probation officer. The jury was instructed to disregard the remark. The appellate court held that "[t]he slight prejudice that resulted from this does not require or justify reversal."

On April 4, 1988, Bernice Lewis filed a petition for a writ of habeas corpus in the district court claiming (1) that she was denied her sixth amendment right to effective assistance of counsel because of her attorney's alleged conflict of interest and (2) that she was denied her fourteenth amendment right to a fair trial by the state trial court's refusal to sever her trial from her brother's and by its refusal to order a mistrial. The district court held that Lewis did not effectively waive her claim to ineffective assistance of counsel at the March 9, 1979 hearing when she asked that attorney Diamond represent her. The district court reasoned that because Diamond indicated that Lewis told him she did not feel he could "fairly defend her", and because the district court believed nothing was said at the hearing that should have caused Lewis to change her mind, Lewis' statement at the conclusion of the hearing that she now wanted Diamond to represent her was inexplicable and required the state trial judge to inquire further into her change of heart. The district court nevertheless denied Lewis' petition, ruling that Diamond provided effective assistance as petitioner's counsel and that the denial of Lewis' motions to sever her trial from her brother's and for a mistrial did not violate her fourteenth amendment due process rights.

## II.

We turn first to respondents' contention that petitioner waived her right to argue on appeal that she was not provided with conflict-free counsel. Defendants can, of course, waive this right:

"[I]t is clearly recognized that a criminal defendant is entitled to legal representation undiluted by conflicting loyalties, ... [but] it is equally obvious that such a right may be waived by a criminal defendant in selecting counsel of his choice.... Moreover, once having made a knowing and intelligent waiver, a criminal defendant may not later attack his conviction premised upon an assertion of conflict."

*United States v. Beniach,* 825 F.2d 1207, 1210 (7th Cir.1987) (citations omitted). The petitioner concedes she told the state trial judge she wanted Diamond as her attorney *after* she heard both Diamond's statement setting out his possible conflict of interest and Sangster's statement rejecting Diamond as his counsel because of the possible conflict. Nevertheless, petitioner argues that her waiver was not "knowing and intelligent" because the trial court was "un-

der a duty to inquire further as to whether the defendant understood the nature of the conflict of interest, the reasons for [her] dramatic shift in position [from the filing of the petition], and whether the defendant wished to waive the right to conflict-free representation". Appellant's brief at 18.

The Illinois Supreme Court, affirming the judgment of the state trial court, found that Bernice Lewis had made a knowing and intelligent waiver of her sixth amendment right to conflict-free counsel. The Supreme Court found that petitioner,

"waived her right to object to any supposed conflict of interest which her lawyer's acquaintance with the victim might pose. In our opinion defendant was adequately informed of the significance of the supposed conflict and understood how it could arguably affect her representation.... The dialogue between the judge and defendant on March 9, 1979, was short, but, as defendants' brief states: 'The conflict here was not subtle nor the pressure subliminal.' Rather, the problem, the possibility that acquaintance with a murder victim might indicate emotional ties which would interfere with counsel's representation of one charged with the murder, required no judge's explanation as a conflict resulting from legal complexities might.... Nor has defendant been shown to have been unaware of key facts concerning her attorney's loyalty at the time she waived the issue."

People v. Lewis, 88 Ill.2d at 436–37, 58 Ill.Dec. at 747, 430 N.E.2d at 998.

As we have already noted, 28 U.S.C. § 2254(d) provides that factual findings of state courts are presumed to be correct in a federal habeas corpus proceedings, if these findings are made after a hearing on the merits, and are fairly supported by the record. In Perri v. Director, Department of Corrections, 817 F.2d 448, 451 (7th Cir.), cert. denied, Perri v. Lane, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987), we held that,

"the determination of knowing and intelligent waiver is a factual inquiry. We therefore conclude that findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption."

See also Sotelo v. Indiana State Prison, 850 F.2d 1244, 1247 n. 6 (7th Cir.1988) ("The presumption of correctness of state court findings under § 2254(d) applies to the validity of waiver." (citing Perri)). Although both Perri and Sotelo involved waivers of Miranda rights, in Perri we expressly noted that we were "re-evaluat[ing] our previous decisions which concluded that § 2254(d) did not apply to the issue of whether a waiver was knowing and intelligent. See, e.g., United States ex rel. Tonaldi v. Elrod, 716 F.2d 431, 437 (7th Cir.1983)." Perri, 817 F.2d at 451. Tonaldi held that whether a habeas corpus petitioner had executed "a knowing and intelligent waiver of his Sixth Amendment right to counsel free from a conflict of interest ... is not ... a question of fact, but an issue of federal law." Tonaldi, 716 F.2d at 437. The explicit reference to Tonaldi as an example of the "previous decisions" being re-evaluated demonstrates that in Perri we rejected the Tonaldi holding that whether a defendant waived his right to conflict-free counsel was a question of law and not fact.[2]

As we reasoned in Perri, "whether a waiver is intelligently made is a factual question, because whether an individual understood his or her rights is an inquiry into

---

**2.** In United States ex rel. Savory v. Lane, 832 F.2d 1011, 1018 (7th Cir.1987), decided several months after Perri, we listed numerous examples of what were termed "'mixed' questions of law and fact ... subject to independent federal review, unaffected by the § 2254(d) presumption." One of these examples was United States ex rel. Duncan v. O'Leary, 806 F.2d 1307, 1314–15 (7th Cir.1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1982, 95 L.Ed.2d 822 (1987), which was cited for the proposition that the "validity of waiver[s]" was not governed by the § 2254(d) presumption. Savory, 832 F.2d at 1018. Duncan, which involved a waiver of the right to conflict-free counsel, was decided before Perri. Savory makes no reference to Perri. Today, we explicitly reject the dicta in Savory that § 2254(d) does not apply to the question of whether a waiver is knowing and intelligent.

his or her state of mind." 817 F.2d at 451. In *Miller v. Fenton*, 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985), ·the Supreme Court stated that whether "an issue involves an inquiry into state of mind is not at all inconsistent with treating it as a question of fact." Moreover,

> "[a]t least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question."

474 U.S. at 114, 106 S.Ct. at 451. The state trial judge, with appropriate review by the state appellate courts, was in the best position to determine petitioner's state of mind when she made her waiver. The judge, in the presence of petitioner-appellant Lewis, conducted the hearing at which attorney Diamond's potential conflict was explored. At this hearing, petitioner, responding to the judge's questions, made her waiver. The state trial court was thus in a better position than a federal court on collateral review to determine whether petitioner understood her rights when she waived them.

■ Once a state court finds that the defendant has understood her rights,

> "then the court has made the necessary subsidiary factual determinations to the conclusion that the defendant has made a knowing and intelligent waiver.... [B]ecause the final conclusion of whether a waiver was intelligent is disposed of by a state court's ascertainment of subsidiary factual determinations, we conclude that it would be incongruous not to give this determination deference under 28 U.S.C. § 2254(d)."

*Perri*, 817 F.2d at 451. The necessary subsidiary factual determinations to support the conclusion that the petitioner made a knowing and intelligent waiver of her sixth amendment right to conflict-free counsel are contained in the Illinois Supreme Court's opinion affirming the state trial court's decision. The Supreme Court stated that the petitioner was "adequately informed of the supposed conflict and understood how it would arguably affect her representation" and had not been shown to be "unaware of key facts concerning her attorney's loyalty" at the time she made the waiver. *People v. Lewis*, 88 Ill.2d at 436–37, 58 Ill.Dec. at 747, 430 N.E.2d at 998.

None of the first seven exceptions to the § 2254(d) presumption of correctness are applicable to this case. 28 U.S.C. § 2254(d)(1)–(7) (*see, supra,* footnote one). In addition, the factual determination that petitioner made an effective waiver is more than fairly supported by the record, as required by § 2254(d)(8). Petitioner concedes that she heard attorney Diamond clearly state his possible conflict of interest and that she heard Sangster detail his reasons for rejecting Diamond as his attorney because of that possible conflict. The potential conflict, as the petitioner herself admitted in her brief to the Illinois Supreme Court, was not "subtle," *People v. Lewis*, 88 Ill.2d at 436–37, 58 Ill.Dec. at 747, 430 N.E.2d at 998, but quite easy to grasp: Diamond had a professional acquaintance with the victim, considered the victim a friend, and attended his funeral. Petitioner was a 31–year–old woman at the time of the hearing. There has been no contention that she was incompetent or unable to comprehend what was being stated in open court. The hearing laid out for her the possible conflict, and then the petitioner affirmatively declared her desire to have Diamond continue to represent her. The state court's determination that she waived her sixth amendment right to conflict-free counsel is fairly supported by the record and is therefore entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(8). The petitioner has waived her right to argue that she was denied conflict-free counsel.

### III.

Petitioner also contends that the state trial court's denial of her motion to sever her trial from her brother's entitles her to habeas corpus relief. She maintains that

she should not have been tried together with her brother, Cornelius Lewis, because of the threat that the introduction into evidence of his prior felony conviction might prejudice her. Petitioner argues that grounds for mistrial occurred when a government witness improperly referred to her brother's probation officer. We reject these contentions.

We note initially that any errors alleged, "in the management of a state criminal trial do not deny the defendant due process of law, *see, e.g., Willard v. Pearson*, 823 F.2d 1141, 1149 (7th Cir.1987), unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair, *see, e.g., Dudley v. Duckworth*, 854 F.2d 967, 972 (7th Cir. 1988)."

*Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). More specifically,

"... In reviewing state court determinations on severance, we will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair.... Joint trials may be found fundamentally unfair if codefendants present true 'mutually antagonistic defenses' or if the 'actual conduct' of the defense of one defendant prejudices another."

*Madyun*, 852 F.2d at 1033–34 (citations omitted). *See also Stomner v. Kolb*, 903 F.2d 1123, 1127 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990). Petitioner makes no argument that she and her brother presented mutually antagonistic defenses. Rather, she claims that a reference by a government witness to her brother's probation officer so prejudiced her as to render her trial fundamentally unfair.

The allegedly prejudicial statement was made by F.B.I. agent Michael B. Neville. When Neville was asked by the prosecutor about the first time he came into contact with Cornelius Lewis, the agent responded, "Well, uh, he was at, uh, visiting his proba-tion officer in Minneapolis, and we—." Trial Transcript ("Tr.") B–75. Defense counsel immediately objected, a conference was held at sidebar, and the judge ordered the jury to leave the courtroom. Petitioner's attorney moved for a mistrial, arguing that his client had been prejudiced by the reference to her brother's probation officer. The trial court denied the motion. The trial court, however, did agree that there might have been some prejudice to Cornelius Lewis. The trial court indicated that it would grant Cornelius Lewis a mistrial if he requested one, but that Lewis would then be tried along with Willie Sangster, an original co-defendant who had obtained a continuance. At this time, Cornelius Lewis withdrew his motion for a mistrial.

When the trial of petitioner and her brother resumed, the judge gave the following instruction to the jury regarding the reference to Cornelius Lewis' probation officer:

"... At the end of the proceedings yesterday there was a very brief reference to a probation office. I want to inform you and direct you, an objection to that reference was sustained. And the court is at this time instructing you to disregard any reference that was made, or any inference that you might draw from it. In doing so, I'm fully aware of the difficulty frequently the juries have in not considering hearing things that in fact have been heard. But I want to mention to you, your—you are under your oaths and obligations as jurors to see to it that all parties in this case receive a fair trial. And while it's difficult, and I'm not at all convinced it's impossible for you to do exactly what I'm instructing you to do, namely, disregard that, do not consider it in any way during your deliberations on this case. It's not evidence before you. It's stricken. It should not be considered by you. I will state that you, nor any of you should in any way permit it to affect your ability, or to affect your deliberations, or to affect your thinking in this case. It would as of this time be a violation of your oaths as jurors, a violation of your oaths I believe to yourselves, and a deprivation of the parties in this case of their right to

a fair trial. Frankly, I'm putting it that strongly to you, so you understand fully what you are required to do, and what I will be expecting you to do."
Tr. B–105–B–106. The trial of petitioner and her brother resumed, and resulted in their convictions.

In *Lewis v. Lane*, 832 F.2d 1446 (7th Cir.1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988), we considered the habeas petition of Cornelius Lewis. Lewis had argued that his conviction and death sentence should be overturned because they were obtained in violation of his sixth amendment right to effective assistance of counsel. We affirmed his conviction, but vacated his death sentence and ordered resentencing. *Id.* at 1465. In discussing F.B.I. agent Neville's mention of Lewis' probation status, we noted that, " ... [A]s the Illinois Supreme Court concluded, the testimony and evidence of petitioner's guilt, if believed, were overwhelming, and there was no reasonable possibility that, but for the FBI agent's reference to petitioner's probation officer, petitioner would not have been convicted." *Id.* at 1463.

We come to a similar conclusion with regard to petitioner Bernice Lewis, who, of course, was in far less danger than her brother of being prejudiced by reference to *his* probation officer. As the district court noted in rejecting petitioner's argument, "[t]he testimony of the FBI agent did not relate to [petitioner] and did not indicate the nature or the extent of her brother's prior record." Thus, we are convinced that the potential for prejudice to her was virtually nonexistent, and the state trial court's explicit and strongly worded instructions removed any doubt that Bernice Lewis was denied her right to a fair trial.

### IV.

The district court's denial of Bernice Lewis' petition for a writ of habeas corpus is AFFIRMED.